IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAUL ARMIJO,

                Petitioner,

    vs.                                      No. CIV 04-504 JB/LFG

JOE WILLIAMS,

                Respondent.


## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

    1.  This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed May 7, 2004.  Petitioner, Paul Armijo ("Armijo") challenges the judgment and sentence entered by the Second Judicial District Court in State v. Armijo, No. CR 2000-1575 (County of Bernalillo, New Mexico).  Armijo is incarcerated at Southern New Mexico Correctional Facilities in Las Cruces, New Mexico.  [Doc. No. 23.]

    2.  Pursuant to a plea agreement, Armijo pled no contest to three charges:  aggravated assault against a household member (Count 2 of the indictment), aggravated battery upon a peace officer (Count 3 of the indictment), and aggravated assault against another individual (charged separately,

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommenda-tions.  A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations.  If no objections are filed, no appellate review will be allowed.

as part of the plea agreement, by information).  [Transcript of State Court Record ("TR") at 100, 103.]

3.      In the federal habeas petition, Armijo identifies three claims:  ineffective assistance of counsel (Count 1), equal protection violation (Count 2), and speedy trial violation (Count 3).  (*See* paragraph 22 *infra* for a detailed presentation of Armijo's claims).

4.      On June 14, 2004, Respondent filed his Answer [Doc. No. 13], and a Motion to Dismiss [Doc. No. 11] and accompanying memorandum.   In his supporting Memorandum, Respondent  describes Armijo's claims to be: (1) ineffective assistance of counsel with respect to the entry of Armijo's plea based on allegations that his former counsel (Attorney Joseph Riggs) was permitted to withdraw before Armijo entered into a plea agreement (when represented by Attorney Sapien) and because his Attorney Riggs failed to file a motion to dismiss as directed by the state court; (2)  denial of equal protection based on allegations that the state court allowed Riggs to withdraw eight days before a trial date was scheduled; and (3) denial of his right to a speedy trial based on allegations that Armijo believed counts 1 and 2 were dismissed by the state court.  [Doc. No. 12, p. 1.] Respondent alleges that Armijo exhausted these claims in state court, but contends that he fails to state a meritorious constitutional claim cognizable under § 2254.  [Doc. No. 13.] Respondent further asserts that Armijo has not shown that the state court proceedings resulted in a decision contrary to or involving an unreasonable application of federal law, or that they resulted in a decision that was based on an unreasonable determination of the facts.  [Doc. No. 13.]  Armijo filed a Response [Doc. No. 21].  Respondent did not file a reply.  The motion is now fully briefed and ready for ruling.  For the reasons given below, the Court grants Respondent's Motion to Dismiss and dismisses Armijo's § 2254 petition, with prejudice.

## Factual and Procedural History

5.      The underlying incident occurred on May 11, 2000 in Bernalillo County.  [Tr. at 1.]
Armijo was charged with child abuse, aggravated assault against a household member and aggravated
battery upon a peace officer.  [Tr. at 1.]  The State alleged that during the incident, Armijo hit an
officer in the face, pinned down the officer and bit the officer.  The State also contended that Armijo
threw hot grease at his girlfriend, her friend and their six-year-old little girl.  [June 21, 2001 transcript
of hearing, at p. 3.]

6.      On May 30, 2000, Armijo was arraigned and released on authorized work conditions.
[Tr. at 12.]  No attorney was appointed for Armijo, and on July 26, 2000, the State moved to compel
selection of counsel for Armijo.  [Tr. at 20.]  On September 13, 2000, a District Public Defender
entered an appearance on behalf of Armijo.  [Tr. at 29.]  On October 20, 2000, Attorney Riggs filed
a Notice of Withdrawal as to the public defender and his entry of appearance.  [Tr. at 30.]  A number
of motions for extensions were filed without objection and were granted.  Some of the extensions
resulted due to medical reasons of the prosecutor, change of defense counsel and/or ongoing plea
negotiations.

7.      In about December 2000, Armijo was arrested and incarcerated for a probation
violation in an unrelated case.  [Tr. at 47.]  On June 25, 2001, Judge Murdoch heard Armijo's motion
on conditions for release.  In the hearing, Attorney Riggs discussed why Armijo's case had been
proceeding so slowly, explaining that two of the civilian witnesses had disappeared which made it
difficult for the State to prove all of the counts in the indictment.  The court ordered the State to
provide the two civilian witnesses for interviews by July 13, 2001.  The judge further stated that "[i]f
they are not provided or interviews not scheduled before that time, Mr. Riggs, file the appropriate

motion and those counts may go away only with the battery on a peace officer." [June 25, 2001

hearing, Tr. at 4.]

8.       On July 20, 2001, Attorney Riggs moved to withdraw from the case, stating that

Armijo was unable to hire an attorney, no hearings were scheduled in the case, and the attorney client

relationship had broken down to the point where counsel and client could not communicate. [Tr. at

55.] On August 20, 2001, Judge Murdoch held a hearing on Riggs' motion. Attorney Riggs

explained that Armijo and he had had a difficult time communicating over many months, and had

disagreed about trial strategy and legal issues. Riggs stated that the final straw was when Armijo sent

Riggs a letter asking Riggs to negotiate a plea. When Riggs negotiated the plea and went to discuss

it with Armijo (who was in jail), Riggs claimed that Armijo "blasted" him and told Riggs that Riggs

was afraid to go to trial. Riggs told Armijo he was not going to put with that type of accusation and

would move to withdraw. Armijo threatened to file a disciplinary complaint against Riggs if he

withdrew. Armijo then filed a disciplinary complaint against Riggs after Riggs filed the motion to

withdraw. The court allowed Riggs to withdraw but advised Armijo that he had just lost an

established and recognized defense attorney. Armijo attempted to raise the issue of the motion to

dismiss that he believed the court had directed Riggs to file by late July, but the court advised Armijo

that he would have to discuss motions with his next attorney. Judge Murdoch further stated to

Armijo that "[i]f you go to trial on your own, that will probably be your last error of judgment you

commit before me." [August 20, 2001 hearing, Tr. at 4.]

9.       On August 28, 2001, a public defender entered an appearance on behalf of Armijo.

[Tr. at 61.] On January 15, 2002, Phillip Sapien substituted for that attorney on behalf of Armijo.

[Tr. at 69.]

4

10.     After numerous extensions, trial in this matter was scheduled on May 6, 2002. [Tr. at 85.] On April 25, 2002, Attorney Sapien filed a motion to dismiss Counts 1 and 2 based on the State's failure to produce requested discovery, namely the two civilian witnesses. In the motion, Sapien noted that Attorney Riggs had agreed with an Assistant District Attorney to dismiss these counts if the witnesses were not located. The agreement was verbal. Subsequently all attorneys changed, without ever having memorialized in writing the purported agreement. [Tr. at 86.]

11.     On May 1, 2002, the state court held a hearing on the motion to dismiss. While the State admitted it was unable to locate the two civilian witnesses, it claimed it had sufficient evidence to proceed with Counts 1 and 2. The court agreed that the counts could proceed but excluded the testimony of those two witnesses, should they be located. The court record shows a form order signed by Judge Murdoch that granted the "motion to exclude witnesses." [Tr. at 97.] That form order did not grant the motion to dismiss.[2] Instead of dismissal, the court elected only to exclude the testimony of these witnesses.

12.     During the hearing, the court further advised the prosecutor that without these witnesses it might be difficult for the State to prove its entire case. [May 1, 2002 Tr. at 7-8.] The court asked counsel about the status of plea negotiations and whether the absence of key witnesses might affect the offer on the table. Court then recessed so that counsel for the State could consult further about a possible plea with Armijo and his attorney. [Id., at p. 11.] Based on the record and the May 1 date on the signed plea agreement, the parties did reach a plea agreement. In addition, it

---

[2]In practical terms, the state court denied the motion to dismiss, with the exception that the court elected to exclude the witnesses at issue from testifying should they be located.

appears that the court took Armijo's plea later on May 1, 2002.  However, no transcript of the proceeding was made or located.[3]

13.    As part of the plea agreement, the State agreed to dismiss Count 1 of the indictment (child abuse, negligently caused) and agreed not to pursue habitual offender proceedings against Armijo.  [Tr. at 105.]  The plea was accepted, and Armijo was sentenced to 4½ years.  [Tr. at 107, 116.]  The entire sentence was suspended, and Armijo was placed on probation for that term. However, because Armijo had awaited trial for about two years, he was accorded two years credit (730 days) for time already served.  [Tr. at 116.]  He was to serve the balance of his sentence, 2½ years as follows: 1½ years on supervised probation and one year of unsupervised probation.  [Id.]

14.    Under the terms of his written plea agreement, Armijo waived his right to appeal, and he did not file a direct appeal.  In the plea agreement, Armijo stipulated that he gave up all motions, defenses, objections, or requests that he had made or could make concerning the court's entry of judgment.  Armijo signed the plea agreement which provided that he had read and understood the agreement, discussed his case and constitutional rights with his attorney, and understood that when he pled guilty he gave up his right to a trial by jury, his right to confront, cross-examine, and compel the attendance of witnesses, and his privilege against self-incrimination.  [Tr. at 106, 107.]

15.    In September 2002, Armijo violated a condition of probation (with respect to this case), his probation was revoked, and he was incarcerated for the remaining term of imprisonment (minus time and probation already served).  [Tr. at 125, 133, 134-36, 143, 145.]  Based on the

---

[3]This Court directed Respondent to supply the entire underlying record so that it could further decipher Armijo's claims and examine issues of exhaustion.  The record was supplied, including the transcript of the hearing on Armijo's motion to dismiss, held on May 1, 2002.  That hearing preceded the plea proceeding, held that same day. However, the transcript of the plea proceeding could not be produced because the court reporter's electronic disk containing the plea proceeding was defective.  Thus, the court reporter was unable to retrieve the proceeding and transcribe it for the Court's review. [Record Proper, Affidavit of Wendy Morrison, filed 1/19/05.]

language of the plea agreement, Armijo could have been subjected to additional habitual offender

proceedings when he was found to have violated conditions of probation.  [Tr. at 10.]  However,

Armijo was not subjected to habitual offender proceedings and was sentenced to 642 days.  [Tr. at

135-36.]

16.     Following conviction for the probation violation, Armijo filed a petition for writ of

habeas corpus, mainly challenging matters that led up to his original plea agreement.  [Tr. at 155,

180.][4]  In Armijo's state habeas petition [Tr. at 155-57], he asserted that Judge Murdoch violated his

due process rights.  Armijo also alleged that Attorney Riggs had improperly moved to withdraw as

counsel and failed to file a motion to dismiss.  Armijo also asserted that Judge Murdoch threatened

Armijo by telling Armijo that he would go to jail if he represented himself at trial.  In addition, Armijo

contended that he was entitled to and did not receive a preliminary hearing as to the charge that was

added by information as part of the plea agreement.  Armijo alleged summarily that his right to a

---

[4]The history of Armijo's state habeas filings is confusing.  However, it appears that on February 2, 2003, Armijo sent a habeas petition to the assistant district attorney for Sandoval County.  Armijo's probation was being overseen in Sandoval County, but this criminal matter was assigned to the Second Judicial District Court in Bernalillo County.  Thus, any habeas petitions should have been presented to the Second Judicial District Court.  That February 2, 2003 petition may not have been received by the Second Judicial District Court until much later.  [Tr. at 180.]  It also appears that on February 6, 2003, Armijo sent a similar habeas petition directly to the New Mexico Supreme Court.  [Tr. at 155.]  In an Order dated March 5, 2003, the New Mexico Supreme Court remanded the matter to the district court with jurisdiction, i.e., the Second Judicial District Court.  [Tr. at 152.]  Based on the copies of the pleadings in the file, the New Mexico Supreme Court faxed the habeas petition and its Order to the state district court in April 2003.  However, the Second Judicial District Court did not file stamp the habeas petition until November 4, 2003.  [Tr. at 155.]  In late November 2003, Armijo wrote a letter to the state district court inquiring into the status of his habeas petition.  The state court responded that Judge Murdoch was aware of his petition and the March 5, 2003 remand of the petition from the New Mexico Supreme Court.  Nonetheless, it appears that the habeas petition was lost in the system between March and November 2003.  Meanwhile, also back in February 2003, Armijo filed a separate, short pleading entitled motion to modify sentence, with a request for hearing, in the Second Judicial District Court.  [Tr.at 137.]  This pleading did not set out any claims and the Court does not discuss it further in this recommended disposition other than to say it was denied by the Second Judicial District Court in a short form order on April 9, 2003.  [Tr. at 137, 140.]  On April 13 ,2003, Armijo also filed a motion to correct sentence with respect to the sentence he received after begin convicted of a probation violation in late 2003.  [Tr. at 142.]  The Second Judicial District Court denied that motion in a short order, noting that the revocation of Armijo's probation was appropriate under all of the circumstances of the case.  [Tr. at 148.]  Other than to note these pleadings, the Court need not address them further in this recommended disposition.

speedy trial was violated and that his equal protection rights were violated.  He further contended in

the petition that he had the right to appear and defend himself in person and by counsel and that his

right to confront the witnesses against him was violated.  At the end of the petition, Armijo states that

he was coerced into signing the plea agreement and implies that the State did not have enough

evidence to convict him.  [Tr. at 156.]

17.     On December 16, 2003, Judge Murdoch denied the petition [Tr. at 184].  The court

identified four issues as being raised by Armijo: "those being that the case should have been dismissed

due to the State's failure to meet discovery deadlines, that the Petitioner feels he was denied due

process by the Court for failing to allow him to proceed pro se, that the Petitioner [] his rights were

violated by not being provided a preliminary hearing, and finally, Petitioner challenges the sufficiency

of the evidence presented to the Grand Jury."  [Tr. at 184-86.]

18.     The state court rejected these claims on the merits, as discussed in the opinion.  Judge

Murdoch explained that the defense never asked that the entire indictment against Armijo be

dismissed, but rather, only counts 1 and 2 of a three-count indictment.  Thus, even if granted, the

entire case would not have been dismissed. Moreover, the court found it had the discretion to impose

the appropriate sanction for the discovery deadline that was violated.  The state court concluded that

exclusion of the witnesses rather than dismissal of counts 1 and 2, was more appropriate.

19.     Judge Murdoch also explained that he had advised Armijo in a hearing that it would

be unwise for Armijo to proceed to trial without an attorney.  The court stated that this advice was

a simple statement of fact, rather than a threat, because the court was convinced that Armijo was not

capable "on a variety of levels" of defending himself against the charges. Armijo's contention that he

was entitled to a preliminary hearing post-indictment was evidence of Armijo's fundamental lack of

understanding of the law.  As noted by the court, Armijo entered into a plea agreement, that expressly included a count brought by information in exchange for dismissing Count 1, and Armijo signed a waiver of preliminary hearing as to this count in the information.

20.      In addition, Judge Murdoch stated in the opinion that as part of Armijo's plea elocution (the transcript of which is unavailable), Armijo confirmed that he was giving up the right to have a preliminary hearing on the count brought by information.  [Tr. at 185-86.]

21.      In his petition for writ of certiorari, Armijo asserted violations of his rights under the New Mexico Constitution and of the 5th, 6th and 14th Amendments, "and other issues along with the four that were addressed were over looked.  Movant's right to speedy trial and right to affective counsel."  [Doc. No. 1, attached petition, "Discussion".]  In this petition, Armijo again discussed the failure of attorney(s) to file a motion to dismiss until months after the state court's directive, and that he was not provided with the right to cross examine witnesses.  Armijo stated  that he was not allowed to exercise his constitutional right to defend himself with the assistance of counsel to file a motion on his behalf.  Armijo further alleged that the state court judge threatened him and prejudiced him by allowing Attorney Riggs to withdraw "8 days before trial date deadline."  Armijo asserted that during the plea elocution he asked the court for reassurance that his rights were not being violated in the plea agreement and that the court told him that it was in Armijo's best interest to sign the plea agreement.  Armijo alleged that he was coerced into signing the plea agreement.  Finally, Armijo argued that his right to a speedy trial was violated and that he received ineffective assistance of counsel by Riggs' failure to file a motion to dismiss.

22.      In a brief Order denying the petition, the New Mexico Supreme Court noted that it had considered Armijo's petition for writ of certiorari.  [Doc. No. 1, attached Order, dated January

9, 2004.] Armijo then filed this federal habeas petition. [Doc. No. 1.] His detailed claims are set out

as follows:

> Claim One, styled "ineffective assistance of counsel": Armijo claims that his second trial counsel ("Attorney Riggs") was ordered by the court to file a motion to dismiss, but refused to do so because he had not been paid. Armijo further asserts that eight days before trial, Attorney Riggs told him to plead guilty or Riggs would withdraw as counsel.

> Claim Two, styled "equal protection": Armijo claims that Attorney Riggs was allowed to withdraw eight days before deadline for trial, which had already been extended, thus giving the court and the State grounds to extend time again. Armijo further asserts that the court told him, in a threatening tone, that if he didn't plead guilty and insisted on representing himself, he would go to prison.

> Claim Three, styled "speedy trial" violation: Armijo claims that on May 1, 2002, the date of his plea agreement, a charge of child endangerment was dismissed and a charge of aggravated assault added to the plea agreement, but that he was never indicted or given a preliminary hearing on the latter charge. Armijo further asserts that Counts 1 and 2 of the indictment were dismissed pursuant to motion, and that he, therefore, should not be sentenced on Count 2, a charge he believes was dismissed.

## Analysis
### Deference to State Court Adjudications

23.     Armijo's petition is analyzed under the Antiterrorism and Effective Death Penalty Act

("AEDPA"). An application for writ of habeas corpus brought by an individual in custody pursuant

to a judgment of a state court shall not be granted with respect to any claim that was adjudicated on

the merits in State court proceedings unless the adjudication of the claim–(1) resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceedings. 28 U.S.C. § 2254(d). This means that a federal court is precluded from granting habeas

relief, except in the narrow circumstances described in § 2254(d), and that this Court must apply a presumption that the factual findings of the state court are correct unless the petitioner can rebut this presumption by clear and convincing evidence. Smallwood v. Gibson, 191 F.3d 1257, 1264-65 (10th Cir. 1999), *cert. denied*, 531 U.S. 833 (2000).

24.     To justify federal habeas relief, the decision of the state court must not only have been erroneous, but also unreasonable. Williams v. Taylor, 529 U.S. 362, 365, 411 (2000); Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir. 2004). "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution." Thompson v. Oklahoma, 202 F.3d 283 (Table, Text in Westlaw), No. 98-7158, 2000 WL 14404 at *6 (10th Cir. Jan. 10, 2000), *cert. denied,* 530 U.S. 1265 (2000).

25.     As an initial matter, the Court determines whether Armijo meets the exhaustion requirements of 28 U.S.C. § 2254(b). Respondent concedes exhaustion, and the Court reads Armijo's underlying habeas pleadings liberally to conclude that the claims raised in this federal proceeding were exhausted. Moreover, Armijo's claims were adjudicated on the merits by the state courts, even though Armijo's characterization of his claims in most of the pertinent pleadings is not entirely clear.

**Ineffective Assistance of Counsel--Claim 1**

26.     The Court reads Armijo's first claim to be that alleged ineffective assistance of counsel violated his Sixth Amendment rights. This claim, based on the accompanying allegations, appears to relate to Attorney Riggs, his failure to file a motion to dismiss by a certain date, and his withdrawal as counsel for Armijo. Although, the state courts did not expressly discuss an ineffective assistance

of counsel claim,[5] the courts did address Armijo's underlying allegations that Riggs had failed to file a motion to dismiss.  Judge Murdoch explained that a motion to dismiss, even if granted, would not have disposed of the entire case.

27.    To prove ineffective assistance of counsel, Armijo must show not only that counsel's performance was deficient but also that this deficient performance prejudiced his defense in that the result would have been different but for the attorney's errors.  Strickland v. Washington, 466 U.S. 668 (1984).  Here, there is no evidence on the record to support any of Armijo's contentions that he did not receive effective assistance of counsel from Attorney Riggs, either with respect to the filing of a motion to dismiss or the withdrawal of Riggs.

28.    This Court agrees with the state court's conclusion that even if Attorney Riggs filed a motion to dismiss, it would not have disposed of the entire case.  At most, it would have disposed of one or two counts.  In any event, at a later date, Attorney Sapien did file a motion to dismiss two of the counts.  The court fully considered the motion and heard argument on it, but denied the request to dismiss Counts 1 and 2.  However, the court granted the motion to the extent that two unlocated witnesses would not be permitted to testify if they were found by the trial date.

29.    Moreover, the focus of the first prong of the Strickland test is "not what is prudent or appropriate, but only what is constitutionally compelled."  Brecheen v. Reynolds, 41 F.3d 1343, 1365 (10th Cir. 1994), cert. denied, 515 U.S. 1135 (1995).  While it might have been more prudent or appropriate for Attorney Riggs to have filed a motion to dismiss Counts 1 and 2 earlier in the

---

[5]In construing the language of § 2254(d), the Court focuses on the state court's resolution of the case.  Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999).  The Tenth Circuit has cited, with approval, the Seventh Circuit's approach in considering a state court's results and deferring to it even where an analysis is lacking.  Id. at 1177-78; see Schaff v. Snyder, 190 F.3d 513, 535 (7th Cir. 1999) ("If the [state court] determination was reasonable, that is, at least minimally consistent with the facts and circumstances of the case, we shall uphold the state court ruling, even if it is not well reasoned or fully reasoned.")

proceedings, there is nothing to support a contention that such action was constitutionally compelled based on the circumstances of this case.

30.     Similarly, the timing of Attorney Riggs' withdrawal as Armijo's counsel does not support an ineffective assistance of counsel claim.  Based on a review of the record, there was no trial date set when Riggs filed his July 20, 2001 motion to withdraw.  However, it is true that the speedy trial time was scheduled to expire on August 28, 2001, eight days after the hearing on Riggs' motion to withdraw was set.  Thus, the State requested an extension of the speedy trial time period, which the New Mexico Supreme Court granted.[6]  [Tr. at 63, 67.]  Eventually, a trial date in this case was scheduled, and nothing in the record or pleadings supports a finding that Armijo was pressured to enter a plea rather than proceed to trial.  Indeed, the plea agreement signed by Armijo indicates that he voluntarily gave up his right to trial and understood that he gave up that right.  In addition, the state court noted that in the plea elocution, Armijo freely and voluntarily entered into the plea agreement.

31.     Giving the state courts the appropriate post-AEDPA deference that is required by § 2254, this Court concludes that Armijo's ineffective assistance of counsel claim was adjudicated on the merits and that the state court's adjudication did not result in any decision that was contrary to or involved an unreasonable application of clearly established federal law.  Likewise, the Court finds that the state decisions were not based on any unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

---

[6]Based on the pleadings and argument at the hearing, it appears that the extension was required at least in major part because Armijo was unable to get along with Attorney Riggs, thereby requiring that another attorney be appointed.  It is undisputed that Armijo filed a disciplinary complaint against Riggs during his representation of Armijo.

32.     Moreover, even if this Court concluded that Armijo's ineffective assistance of counsel

had not been fully adjudicated in the state court, habeas relief would not be available to Armijo,

because he fails to show that he was prejudiced by any of the identified actions or alleged omissions

by his trial attorney.  Thus, the Court recommends that the ineffective assistance of counsel claim be

dismissed with prejudice.

<u>**Involuntary Plea–Claim 2**</u>

33.     While Armijo styles his second claim as an equal protection claim, the related

allegations do not support any type of equal protection violation.  However, a *pro se* plaintiff's

characterization of his claims is not dispositive.  <u>Roman-Nose v. New Mexico Dep't of Human</u>

<u>Services</u>, 967 F.2d 435, 436-37 (10th Cir. 1992).  Therefore, based on some of the allegations, i.e.,

that the state court threatened Armijo, the Court will address the second habeas claim as one raising

issues concerning the voluntariness of Armijo's plea.

34.     On review, a federal court may set aside a state guilty plea only for failure to satisfy

due process.  <u>Miles v. Dorsey,</u> 61 F.3d 1459, 1465 (10th Cir. 1995), *cert. denied,* 516 U.S. 1062

(1996).  A defendant has not been given due process unless his guilty plea was voluntary and

intelligently made.  <u>Id.</u>  "To the extent that the question of whether the defendant knowingly and

voluntarily made the plea depends on findings of fact made by the state court on habeas review, these

findings, with specified exceptions, carry a presumption of correctness."  <u>Cunningham v. Diesslin</u>, 92

F.3d 1054, 1060 (10th Cir. 1996).

35.     As explained *supra*, a transcript of the plea proceedings is not available.  However,

the state court stated in his denial of Armijo's state habeas petition that Armijo was "afforded full

opportunity to challenge the evidence against him.  Rather than doing so, Mr. Armijo freely and

14

voluntarily chose to enter a plea of no contest to the charges brought against him.  The record of the plea elocution supports the validity of the plea in that the Petitioner stated that he was not coerced, that he felt the plea was in his best interests, that he understood the plea, that he had enough time to speak with his attorney prior to entering the plea and that he was satisfied with the representation that he had been given."  [Tr. at 186.]  The state court further commented that the plea entered into by Armijo clearly was in his best interests as was evidenced in part by Armijo failure to challenge the plea until he later violated his conditions of probation that resulted in his incarceration.

36.     The plea agreement itself, as fully described above, supports the conclusion that Armijo waived his right to trial in exchange for accepting the benefits of the plea agreement, which included dismissal of a child abuse count and agreement by the State not to pursue habitual offender enhancements which could have significantly increased Armijo's period of incarceration.

37.     Moreover, there is no evidence that the state court's advice to Armijo that he would be unwise to proceed to trial without an attorney, or Riggs' withdrawal and alleged attempts to negotiate a plea for Armijo, support a claim that Armijo was coerced into entering the plea agreement.  The state court explained that it had not threatened Armijo in any way.  Rather, the court sagely advised Armijo that it would not be in his best interest, based on his lack of legal knowledge and understanding, to proceed to trial *pro se*.  The Court has examined the transcript of the proceeding at issue and does not construe such advice to amount to any type of threat.  In addition, according to Rigg's presentation of his motion to withdraw, he had a letter from Armijo indicating that Armijo wished to enter into a plea.  Thus, while Armijo now states that he never wished to enter into a plea, there is no evidence to support his argument.  Indeed, the signed plea agreement expressly contradicts Armijo's allegation that his plea was coerced.

38.     The Court concludes that the state court's adjudication did not result in any decision that was contrary to or involved an unreasonable application of clearly established federal law and that the state decisions were not based on any unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, the Court recommends that the equal protection/voluntariness of plea claim be dismissed with prejudice.

### Due Process Violation–Claim 3

39.     Armijo styles his third habeas claim as a speedy trial violation,[7] but his characterization, as noted previously, is not dispositive.  Here, the underlying allegations in support of his third habeas claim do not support or even address a possible speedy trial violation.  Based on Armijo's allegations that he was not properly notified of the count in the information to which he pled, the Court construes the third habeas claim to be a due process claim.  In other words, Armijo asserts here that his due process rights were violated because he was not indicted or given a preliminary hearing as to the charge of aggravated assault that was added as part of the plea agreement.  In essence, then Armijo contends that he did not receive fair notice of the charge in the information.

40.     A defendant is entitled to fair notice of the criminal charges against him under the Sixth Amendment's right to a fair trial and the Fourteenth Amendment's guarantee of due process. Claims that a charging instrument violated due process by not providing such fair notice are

---

[7]Armijo might have tried to support a claim for speedy trial violation in view of the delay between his arraignment and last trial date.  "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."  U. S. Const. amend. VI.  The Court is doubtful, however, that Armijo would have succeeded with such a claim.  First, the Court notes that Armijo would not have been incarcerated during the entire delay if not for his violation of conditions of probations in an unrelated case because he had been allowed a work release in this case.  Second, under the requirements of <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972), it appears that many of the delays would have been attributed to the defense, that Armijo did not assert his right to a speedy trial at the pertinent times, and that there is no evidence here of prejudice to the defense.

cognizable in habeas actions.  *See* <u>Hunter v. State of N.M.</u>, 916 F.2d 595, 598 (10th Cir. 1990), *cert. denied*, 500 U.S. 909 (1991).

41.     Here, Armijo's claim appears to be premised on his lack of understanding of the law, which is exactly what the state court judge explained in his denial of Armijo's state habeas petition. Armijo "freely and voluntarily" signed an express waiver of his right to a preliminary hearing and presentation to the grand jury of the count charged in the information.  [Tr. at 99.]  In addition, the plea agreement, also signed by Armijo, sets forth that Armijo was pleading to two counts of the original indictment along with the crime charged in the information.  [Tr. at 103, 105.]

42.     In addition, Armijo's allegations that he was sentenced on counts that were dismissed reflect Armijo's misunderstanding of what occurred in this case.  Counts 1 and 2 of the original indictment were not dismissed.  Rather, the state court excluded the testimony of certain witnesses in lieu of dismissing the counts.  In the plea agreement, the parties agreed that Count 1 of the original indictment would be dismissed.  However, Armijo was sentenced on the two remaining counts (Counts 2 and 3, and Count 1 of the information).  Thus, these allegations neither support a speedy trial or due process violation.

43.     Therefore, the findings of the state district court as to this claim or allegations are neither contrary to established federal law nor do they represent unreasonable determinations of the facts in light of the evidence presented and the pertinent pleadings.  Accordingly, the Court recommends dismissal of the due process claim with prejudice.

17

## **Recommended Disposition**

That Respondent's Motion to Dismiss [Doc. No. 11] be granted, Armijo's petition [Doc. No. 1] be denied and the case be dismissed with prejudice.


_____
Lorenzo F. Garcia
Chief United States Magistrate Judge

18